# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:17CV-00100-JHM**

**JUSTIN LAY**                                                                                                                    **PLAINTIFF**

**V.**

**LOUISVILLE-JEFFERSON COUNTY**
**METRO GOVERNMENT**                                                                                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff, Justin Lay, and Defendant, Louisville-Jefferson County Metro Government [DN 25, DN 26]. Fully briefed, these matters are ripe for decision.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-

moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

In September of 2015, Defendant, Louisville-Jefferson County Metro Government (hereinafter "Defendant" or "Louisville Metro") hired Plaintiff, Justin Lay (hereinafter "Plaintiff" or "Lay"), as a packer/handler in its Solid Waste Management Division. As a member of the Teamsters Union, Lay bid on a promotion to Equipment Operator in August of 2016. The position required the employee to hold a Commercial Driver's License. Louisville Metro awarded Lay the job effective August 15, 2016.

Under the terms of the contract, Louisville Metro provided Lay with three months to obtain his CDL. The published job description for the position included the special requirement that the awardee "[m]ust possess and maintain a valid Class A Commercial Driver's License (CDL) with tanker endorsement or obtain within three months of employment." (DN 25-2.) Accordingly, Lay's deadline to earn the CDL was November 15, 2016. Lay testified that obtaining a CDL required passing a written exam, passing a physical, obtaining a copy of the applicant's driving record, obtaining a learner's permit, and passing a driving test. On September 15, 2016, Richmond Booker, Solid Waste Manager, sent Lay a Memorandum indicating that it had come to the attention of Management that he had not yet obtained a valid CDL as outlined in his new job description. The Memorandum notified Lay that "[i]f you fail to obtain your Class 'A' Commercial Driver's License (CDL) by November 15, 2016 your

2

employment with Solid Waste will be terminated immediately." (Booker Memorandum at DN 25-6.) Lay signed the Memorandum acknowledging receipt of it.

On November 2, 2016, Lay obtained his CDL learner's permit. He was required to hold the learner's permit for at least 14 days before completing the driving test. Joe Nichols with Louisville Metro's Safety Department scheduled Lay's CDL driving test for November 16, 2016, and Director of Public Works Vanessa Burns and Assistant Director of Training and Administration for Public Works Julie Toler approved an extension of one day for Lay to take his CDL driver's exam. (Julie Toler at 29.) Toler testified that once she received a CDL permit, her office sends supplemental paperwork to the supervisor of the employee to fill out. (Id. at 66.) The supplemental paperwork is approximately 12 pages in length. (Id. at 69.) Lay filled out the supplemental paper work on November 2, 2016.

On November 7, 2016, Jessica Brunk forwarded an email from the Louisville Metro's Compliance Coordinator to Richmond Booker indicating that "just a few items need attention before [the] CDL orientation" for Lay could be conducted: (1) "Supplemental Application Page 3: Please have the employee review the FMCSR and 49 CFR Part 40 questions as they pertain to the position of Packer Laborer;" (2) "Supplemental Application Page 3: Please have the employee add his current position;" (3) "Release and Request for Previous Employer Information: Please ensure that the candidate signs and dates in the space provided;" (4) "A new driver history report needs to be submitted." (DN 30-3, DN 25-7, Forwarded Email Brunk to Booker.)

On November 7, 2016, Lay suffered a broken right ankle in an off-duty accident. Lay's physician restricted his work duties to non-weight bearing work. Lay informed his supervisor of his injury and need for leave on November 9, 2016. On or before November 14, 2016, Lay submitted his request for medical leave pursuant to the Family Medical Leave Act. Lay received

3

preliminary approval of his leave on November 15, 2016. After Lay provided his physician's medical certification, Louisville Metro granted final approval of the leave on November 28, 2016. Louisville Metro determined that Lay's FMLA-protected leave began on November 11, 2016, and would conclude on December 20, 2016.[1]

On November 23, 2016, Supervisor Richmond Booker called Lay and terminated his employment for failing to obtain his CDL. Specifically, the Corrective Action Form stated:

> As of 11/15/2016, you have failed to even submit a complete CDL packet which is required to be submitted [to the] Public Works Personnel Supervisor and then would be forward to Human Resources before CDL Orientation can be administered which is required before an individual can start training with Public Works Safety and Training Division. The Public Works Safety and Training Division scheduled your CDL driving test for 11/16/2016 which at that time you had not trained nor were you able to take the test. Unfortunately, you were unable to meet the requirements of the Equipment Operation-SWMS position within the allotted timeframe.

(Metro Public Works & Assets Corrective Action Form, 11/22/16, DN 25-11.) The Union filed a grievance with respect to the termination. Director of Public Works Vanessa Burns upheld Lay's termination.

As a result of his termination, Lay filed suit against Louisville Metro on January 26, 2017, in the Jefferson Circuit Court alleging that his termination violated the Family and Medical Leave Act, 29 U.S.C. § 2615. This action was removed to this Court. Both parties have now filed cross motions for summary judgment.

### III. DISCUSSION

The Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, entitles qualifying employees up to twelve weeks of unpaid leave each year "to care for a spouse, child, or parent

---

[1] Louisville Metro argues that the FMLA leave "was errantly approved on November 28, 2016, Plaintiff's termination having occurred on November 23, 2016." (Defendant's Motion for Summary Judgment at 5.)

with a 'serious health condition' or if the employee has a 'serious health condition' that renders the employee unable to perform the functions of his job." Payne v. Goodman Mfg. Co., L.P., 726 F. Supp. 2d 891, 898 (E.D. Tenn. 2010)(citing 29 U.S.C. § 2612(a)(1)(C)-(D)). A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider. 29 U.S.C. § 2611(11). "To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave." Payne, 726 F. Supp. 2d at 898 (citing Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004); Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 723-24 (6th Cir. 2003)). It is unlawful for employers to either interfere with the rights afforded employees by the FMLA or retaliate against employees for exercising their FMLA rights. 29 U.S.C. § 2615(a).

There are two separate theories of recovery under the FMLA: the "interference" theory and the "retaliation" theory. Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). The "interference" theory is based on 29 U.S.C. § 2615(a)(1), which states that employers cannot "interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided . . ." by the FMLA. "The 'retaliation' or 'discrimination' theory arises from 29 U.S.C. § 2615(a)(2), which states that an employer cannot 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'" Gates v. U.S. Postal Serv., 502 Fed. Appx. 485, 488–89 (6th Cir. 2012).

A plaintiff can prove his FMLA claim using either direct or indirect evidence. Demyanovich v. Cadon Plating & Coating, L.L.C., 747 F.3d 419, 432 (6th Cir. 2014). "'The direct evidence and [indirect] evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both.'" Id. (quoting Kline v. Tennessee Valley Auth., 128 F.3d 337, 348–49 (6th Cir. 1997)). "The term 'direct evidence' means evidence that requires 'no inferences' to reach the conclusion that FMLA interference [or retaliation] 'was a motivating factor' in the

5

action that the employer initiated against the employee." McMurray v. Eastman Chem. Co., 2018 WL 1803203, at *5 (E.D. Tenn. Apr. 16, 2018)(quoting Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008) (citations omitted)). See also Tilley v. Kalamazoo County Road Commission, 654 Fed. Appx. 675, 683 (6th Cir. 2016). If an employee successfully presents direct evidence in an FMLA case, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have terminated the plaintiff regardless of his use of FMLA leave. Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 707 (6th Cir. 2008). See also Demyanovich, 747 F.3d at 432 (quoting Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 382 (6th Cir. 2002)).

Where there is no direct evidence of unlawful conduct, the Sixth Circuit applies the Title VII burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973), to both FMLA interference and retaliation claims. Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012); Jaszczyszyn v. Advantage Health Physician Network, 504 Fed. Appx. 440, 2012 WL 5416616, *7 (6th Cir. Nov. 7, 2012); Cronk v. Dolgencorp, LLC, 2017 WL 2225108, *10 (E.D. Mich. May 22, 2017). Under this standard, if a plaintiff satisfies the *prima facie* case as to either an interference or retaliation claim under the FMLA, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. Gates, 2012 WL 4902851, *4. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Id.

### A. Direct Evidence

As noted above, "[t]he term 'direct evidence' means evidence that requires 'no inferences' to reach the conclusion that FMLA interference [or retaliation] 'was a motivating factor' in the action that the employer initiated against the employee." McMurray, 2018 WL

6

1803203, at *5 (quoting Imwalle, 515 F.3d at 544). Lay argues that the deposition testimony of Burns and Toler provides direct evidence of Louisville Metro's interference with Lay's FMLA benefits and its retaliation against Lay for requesting and taking FMLA.

With respect to Lay's FMLA interference claim, the Court concludes that Lay has submitted direct evidence of interference. Both Burns and Toler concede that the only reason Louisville Metro terminated Lay was his failure to pass the CDL driving test on November 16, 2016, while on leave from work. (Burns Dep. at 52; Toler Dep. at 83.) Specifically, Toler testified:

> Q: Would you agree that the only reason Mr. Lay was terminated was because of failing to obtain the CDL?
> A. Yes.

(Toler Dep. at 83.) Significantly, in her deposition, Burns agreed that Lay had until November 16th to complete the CDL license and that even if Lay had been on FMLA since November 11th, that fact would not have changed her decision to terminate him in any way. (Burns Dep. at 58, 64.) Accordingly, this testimony constitutes direct evidence that Louisville Metro required Lay to complete the CDL requirements while on FMLA leave and terminated him for his failure to complete these assigned work tasks while on leave. Requiring an employee to work while on leave from work is the definition of interference with an employee's FMLA rights. Arban v. West Pub. Corp., 345 F.3d 390, 405 (6th Cir. 2003) (recognizing that terminating an employee's employment for refusing to perform a work-related task while on medical leave amounts to interference with FMLA rights). A factfinder would not be required to draw any inferences to determine that in order to obtain his CDL, Lay would have had to complete the remaining requirements and take the driver's test while on FMLA leave.

Because Lay has produced direct evidence of interference with his FMLA leave, the burden shifts to Louisville Metro to prove by a preponderance of the evidence that it would have

made the same decision to discharge Lay regardless of whether it interfered with his FMLA leave. Daugherty, 544 F.3d at 707. See also Edgar v. JAC Prods., Inc., 443 F.3d 501, 508 (6th Cir. 2006)("[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."),

Having reviewed the evidence, the Court finds genuine disputes of material fact with respect to this issue. Louisville Metro proffered evidence that it would have terminated Lay regardless of his use of FMLA leave. Louisville Metro contends that before his claim for FMLA benefits even arose, Plaintiff's own delay and inaction made it impossible for him to timely acquire a CDL license. Specifically, Toler testified that she felt it was impossible for Lay to obtain his CDL by the deadline given how much needed to be accomplished in the days between his submission of his initial supplemental paperwork which was incomplete and the scheduled CDL driver's test. (Toler at 34, 66.) Specifically, Toler testified that Lay had not corrected his supplemental paperwork, had not been cleared to perform his one-hour CDL orientation, had not been sent for a DOT pre-employment drug screen which takes four to seven days to complete, and as a result, had not been approved to start the CDL training on the equipment. (Id. at 66-67.) Toler further testified that "[w]ith all that in between, it wasn't going to be possible for Mr. Lay to obtain his CDL." (Id. at 67.) For these reasons, the Court finds that a genuine dispute of material fact exists regarding whether Louisville Metro interfered with Lay's FMLA leave.

With respect to the FMLA retaliation claim, the Court finds that the concessions by Burns and Toler that the only reason Louisville Metro terminated Lay was his failure to pass the CDL driving test on November 16, 2016, do not constitute direct evidence that Lay was terminated in retaliation for requesting and taking FMLA leave. "'Discriminatory remarks by decision makers and those who significantly influence the decision-making process can

constitute direct evidence of discrimination.'" Brister v. Michigan Bell Tel. Co., 2016 WL 74870, at *5 (E.D. Mich. Jan. 7, 2016)(quoting Sharp v. Aker Plant Servs. Grp., Inc., 726 F.3d 789, 798 (6th Cir. 2013). "However, if comments 'only lead to a conclusion of discrimination after numerous inferences and assumptions are made, they are not 'direct evidence' of discrimination as a matter of law.'" Brister, 2016 WL 74870, at *5 (quoting DeMasellis v. St Mary's of Michigan, 506 Fed. Appx. 435, 436 (6th Cir. 2012)). While these statements reflect Burns' and Toler's strict adherence to Louisville Metro's three-month requirement of obtaining a CDL, these statements would require a factfinder to infer Burns' and Toler's discriminatory or retaliatory animus against employees requesting or taking FMLA leave. Likewise, the fact that Burns could drive a truck with a boot and bragged on an employee on non-FMLA leave for obtaining her CDL within the required three month timeframe does not necessarily mean that Burns terminated Lay in retaliation for his request for FMLA leave. As such, the Court must apply the McDonnell Douglas burden-shifting framework to evaluate the evidence in this case. Gates, 502 Fed. Appx. at 489.

Finding genuine disputes of material fact, the Court denies Plaintiff's motion for summary judgment.

### B. Indirect Evidence - Prima Facie Case

#### 1. Interference Theory

Analysis of the interference claim under the either the direct evidence or indirect evidence path does not alter the ultimate outcome of the summary judgment motions. Notwithstanding its finding that Plaintiff established direct evidence of FMLA interference, the Court will apply the McDonnell Douglas burden-shifting framework to evaluate the evidence related to Plaintiff's FMLA interference claim as well. Gates, 502 Fed. Appx. at 489.

To establish a *prima facie* case for an interference claim, an employee must prove that:

(1) he was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled. See Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005) (citing Cavin, 346 F.3d at 719). "Employees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." Edgar, 443 F.3d at 508(citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)("[Section] 2617 provides no relief unless the employee has been prejudiced by the violation ....")). Unlike a retaliation claim, the motive of the employer is irrelevant for a claim of interference. Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 282 (6th Cir. 2012). For purposes of the motion, Louisville Metro concedes that Lay can satisfy the *prima facie* case of the interference claim.

## 2. Retaliation Theory

Plaintiff argues that the Defendant retaliated against him for exercising his FMLA rights in violation of 29 U.S.C. § 2615(a)(2). "The issue in an FMLA retaliation claim is whether an employer retaliated or discriminated against an employee because the employee invoked [his] FMLA rights." Brady v. Potter, 476 F. Supp. 2d 745, 758 (N.D. Ohio 2007). "To establish an initial *prima facie* case of retaliation, a plaintiff must show the following by a preponderance of the evidence: '(1) he engaged in an activity protected by the [FMLA]; (2) that this exercise of his protected rights was known to the defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" Morris v. Family Dollar Stores of Ohio, Inc., 320 Fed. Appx. 330, 338 (6th Cir. 2009)(quoting Arban, 345 F.3d at 404). Louisville Metro does not dispute the first three elements of the *prima facie* case. Instead, Louisville Metro claims that Lay cannot establish the fourth element.

"Causation can be proven indirectly through circumstantial evidence such as suspicious timing." Lindsay v. Yates, 578 F.3d 407, 418 (6th Cir. 2009) (citing Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 524–25 (6th Cir. 2008)). Specifically, the Sixth Circuit "'has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.'" Bush v. Compass Group USA, Inc., 683 Fed. Appx. 440, 451 (6th Cir. 2017)(quoting DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009)); Krumheuer v. GAB Robins N.A., Inc., 484 Fed. Appx. 1, 5 (6th Cir. 2012)("[W]e have concluded that temporal proximity alone is sufficient to establish a prima facie case of FMLA retaliation.") However, the more time that elapses between the protected activity and the adverse action, the more the plaintiff must supplement his claim with "other evidence of retaliatory conduct to establish causality." Mickey, 516 F.3d at 525.

The Sixth Circuit has found sufficient evidence of a causal connection where the time between the employee's protected activity and the employer's adverse action was two to three months. Cooley v. East Tennessee Human Res. Agency, Inc., 2017 WL 6547387, at *6 (6th Cir. Dec. 22, 2017); Dye v. Office of the Racing Comm'n, 702 F.3d 286, 306 (6th Cir. 2012) (finding that two months sufficient to show a causal connection); Singfield v. Akron Metro. Housing Auth., 389 F.3d 555, 563 (6th Cir. 2004) (stating that three months was "significant enough to constitute sufficient evidence of a causal connection"); Passmore v. Mapco Express, Inc., 2017 WL 4176268, at *10 (M.D. Tenn. Sept. 19, 2017).

In the present case, Louisville Metro notified Lay of his termination 16 days after his injury and eight days after its admitted receipt of Lay's request for medical leave under the FMLA. Given the timing of the termination, the Court finds that the temporal proximity is

11

sufficient for Lay to meet his *prima facie* burden of showing a causal connection between the protected activity and the termination.

### C. *Legitimate, Non-Discriminatory Reason and Pretext*

The Court finds that Defendant has offered a legitimate, nondiscriminatory explanation for Plaintiff's termination– that Lay failed to obtain a CDL license within three months of his award letter for the Equipment Operator-SWMS position and could not obtain it even if he had not been injured on November 7, 2016. Louisville Metro contends that before his claim for FMLA benefits even arose, the Plaintiff's own delay and inaction made it impossible for him to timely acquire a CDL license. In fact, Louisville Metro argues that despite the fact that Burns granted an extension of Lay's deadline to November 16th, the additional day did not aid Lay because he had not completed sufficient requirements prior to his injury to "obtain the license within the extended time." (Defendant's Motion at 4.) Specifically, Louisville Metro maintains the following tasks Lay needed to complete before he could take the CDL driver's test: (1) Supplemental Application; (2) CDL orientation; (3) drug testing; and (4) after negative drug test, equipment training. Further, Louisville Metro argues because Lay failed to fill out the Supplemental Application on November 2, 2016, correctly, he put himself in the position where success was not attainable and failure was inevitable. (Id.)

Defendant having articulated a legitimate, non-discriminatory reason, the burden shifts back to Plaintiff to prove that the explanation is a mere pretext for unlawful retaliation. To establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir.1994) (overruled on other grounds, Geiger v. Tower Automotive, 579 F.3d 614 (6th Cir. 2009)).

While it is true that an employee may be lawfully terminated and precluded from

exercising his or her FMLA rights "if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave," Arban, 345 F.3d at 401, the Court finds that a genuine dispute of material fact exists as to whether the reason articulated by Defendant for Plaintiff's termination was a pretext for unlawful interference or retaliation.

Lay was terminated at least eight and no more than fourteen days, depending on whose testimony one credits, after officially notifying his employer of his need for FMLA leave. Unlike its role in establishing a *prima facie* case, 'the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.'" Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 285 (6th Cir. 2012) (quoting Donald v. Sybra, Inc., 667 F.3d 757, 763 (6th Cir. 2012)). However, the Sixth Circuit found that "'suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.'" Id. (citing Bell v. Prefix, Inc., 321 Fed. Appx. 423, 426 (6th Cir. 2009)). The temporal proximity between Lay's request for FMLA leave and his termination, coupled with additional evidence discussed below, gives rise to an inference that the reason proffered by the Defendant is a pretext.

The testimony of Burns and Toler, along with the timetable for completion by Lay of the CDL driver's test, creates a disputed issue of fact as to whether Louisville Metro would have terminated Lay notwithstanding his request for or taking of FMLA leave. Lay has submitted sufficient evidence to suggest that the proffered reason for his termination had no basis in fact or did not actually motivate the adverse action.

Lay received his CDL permit on November 2, 2016. Burns and Toler approved an extension of one day for Lay to take his CDL driver's exam. Joe Nichols scheduled Lay's CDL driving test for November 16, 2016. (Toler at 29.) Toler testified that once she received a CDL permit, her office sends supplemental paperwork to the supervisor of the employee to fill out. (Id. at 66.) The supplemental paperwork is approximately 12 pages in length. (Id. at 69.) Lay

13

filled out the supplemental paper work on November 2, 2016. On November 7, 2016, Jessica Brunk forwarded an email from the Louisville Metro's Compliance Coordinator to Richmond Booker indicating that "just a *few* items need attention before [the] CDL orientation" for Lay could be conducted: (1) "Supplemental Application Page 3: Please have the employee review the FMCSR and 49 CFR Part 40 questions as they pertain to the position of Packer Laborer;" (2) "Supplemental Application Page 3: Please have the employee add his current position;" (3) "Release and Request for Previous Employer Information: Please ensure that the candidate signs and dates in the space provided;" (4) "A new driver history report needs to be submitted." (DN 30-3, DN 25-7, Forwarded Email Brunk to Booker (emphasis added)).

Toler testified in her deposition that CDL orientation lasted an hour and could be performed by the safety trainer within "a few days." (Toler Dep. at 67.) Further, Toler testified that Lay was also required to submit to a Department of Transportation pre-employment drug screen which would typically take four to seven days to get the results from U.S. Healthworks, the company hired by Louisville Metro to conduct the test. (Id.) The record further reflects that Lay had prior experience driving and operating heavy equipment and had actually practiced driving the equipment on 20 to 30 occasions during his employment with Louisville Metro. (Lay Dep. at 52-53.) Thus, a reasonable jury could believe that Lay could have completed the prerequisites necessary to take and pass his CDL driver's test by November 16th absent the injury and his requested FMLA leave.

In fact, a review of the record suggest that Louisville Metro's employees involved in the CDL process believed Lay could complete the CDL by November 16. Nichols scheduled Lay's CDL driving test for November 16, both Toler and Burns granted Lay an extension until November 16 to obtain his CDL, Toler met with Lay prior to November 6 and indicated to Lay "we're down to the wire," and Brunk emailed Booker on November 7 asking him to work with

Lay to complete the application process. Thus, Toler's timeline account, the conduct of Louisville Metro's employees involved in the actual CDL process, and portions of the deposition testimony of Toler and Burns create an inference that Louisville Metro's stated reason is a pretext and that Louisville Metro terminated him instead for his use of FMLA leave or in retaliation for use of his FMLA leave.

Louisville Metro argues that the notion that Burns' attitude was retaliatory is belied by Burns' and Louisville Metro's efforts to assist Lay throughout his probation to encourage compliance. The Court disagrees. Burns' testimony could certainly suggest that Louisville Metro's proffered reason did not actually motivate the adverse employment action. A jury could infer from Burns' deposition testimony that employees under Burns' supervision who were qualified for FMLA leave were still required to meet required job promotion deadlines while on leave and that Burns' expected Lay to obtain his CDL by November 16, 2016, regardless of whether or not he was on leave or attempting to exercise his FMLA leave. See Tilley v. Kalamazoo Cty. Rd. Comm'n, 654 Fed. Appx. 675, 684 (6th Cir. 2016)("The termination letter's citation to Tilley's failure to complete the updated job classification poses an odd dilemma. On the one hand, it could be viewed as KCRC taking an adverse employment action for Tilley's failure to complete work on August 1, the time that Tilley started his leave. On the other hand, it could be argued that 'the wheels of termination' were put in motion prior to Tilley's taking leave on August 1."); Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007) ("If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled."); Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 726 (6th Cir. 2003) ("[A] termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA."); Wallner v. Hilliard, 590 Fed. Appx. 546, 554

(6th Cir. 2014) ("[Plaintiff] may succeed on her FMLA retaliation claim even if multiple factors contributed to [the employer]'s decision to discharge her; she is entitled to a jury so long as a reasonable one could find that both permissible and impermissible factors motivated the termination decision.").

For these reasons, the Court denies summary judgment in favor of Defendant on Plaintiff's FMLA interference and retaliation claims.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the cross-motions for summary judgment filed by Plaintiff, Justin Lay, and Defendant, Louisville-Jefferson County Metro Government [DN 25, DN 26] are **DENIED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 25, 2018